UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ROBERT ANTON LIEN [1],

    Defendant.

No. CR-13-2105-RHW

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Before the Court is Defendant's Motion to Dismiss, ECF No. 31. The Government has responded. ECF No. 32. The Court held a hearing in the above-captioned matter on October 1, 2013, in Yakima, Washington. Defendant was present and represented by Rick Hoffman. Alexander Ekstrom appeared on behalf of the Government. The Court is now fully informed, having reviewed the motion and responses, and enters the following order. For the reasons set forth below, the Court **grants** Defendant's Motion to Dismiss.

///

///

---

[1] Also pending before the Court are supervised release violations in Case No. CR-08-2068-RHW. On March 27, 2013, the Court continued Defendant's supervised release revocation hearing until the resolution of other pending state charges. ECF No. 81. Defendant was originally arrested on the instant offense on March 1, 2013, by the Selah Police Department and has been detained since that date in either state or federal custody. Defendant was initially charged federally via a criminal complaint on July 12, 2013 in the instant Case No. CR-13-2105-RHW.

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT * 1**

## BACKGROUND

On August 14, 2013, Defendant Robert Anton Lien was indicted on a single count of bank fraud in violation of 18 U.S.C. § 1344. *See* Indictment, ECF No. 17. Specifically, the Indictment alleged that on or about January 21, 2013 to March 1, 2013, Defendant devised a scheme and artifice to defraud a federally insured financial institution, namely Bank of America, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of said financial institution by means of false and fraudulent pretenses and representations. *Id.* at ¶¶ 1, 4.

As part of the scheme and artifice to defraud, Defendant entered the premises of Pingrey Ford Motors ("Pingrey") located in Selah, Washington, on January 21, 2013 to arrange for the purchase of a 2013 Ford F350 truck. *Id.* at ¶ 5. He then returned to Pingrey on January 30, 2013, and completed all documentation to purchase the truck and wrote a personal check to Pingrey as payee from his Bank of America checking account in the amount of $68,488.53. *Id.* at ¶ 6. The check was post-dated to February 2, 2013. *Id.* Pingrey accepted the check and Defendant took delivery of the vehicle and removed it from the premises of Pingrey. *Id.*

The Government further alleged in the Indictment that Defendant knew at all times that his checking account did not have sufficient funds to cover the check. *Id.* at ¶ 7. On February 8, 2013, the check was dishonored by Bank of America for insufficient funds to satisfy the payment of the Ford F350 truck at Pingrey. *Id.* at ¶ 7. Subsequently, Defendant instructed Pingrey to present the check for payment again. *Id*. The check was then dishonored for insufficient funds a second time. *Id.*
///
///
///

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 2

1

**LEGAL STANDARD**

2  **A.    Motion to Dismiss**

3        "In ruling on a pre-trial motion to dismiss an indictment for failure to state

4  an offense, the district court is bound by the four corners of the indictment."

5  *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002). The court must accept

6  the allegations in the indictment as true in determining whether a cognizable

7  offense has been charged. *Id.* "A motion to dismiss the indictment cannot be used

8  as a device for a summary trial of the evidence . . . . The [c]ourt should not

9  consider evidence not appearing on the face of the indictment." *United States v.*

10  *Jensen,* 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Marra,* 481 F.2d

11  1196, 1199–1200 (6th Cir. 1973)).

12  **B.    Bank Fraud**

13      Bank Fraud under 18 U.S.C. § 1344 provides in relevant part:

14  Whoever knowingly executes, or attempts to execute, a scheme or artifice—

15          **(1)** to defraud a financial institution; or

16          **(2)** to obtain any of the moneys, funds, credits, assets, securities, or
17          other property owned by, or under the custody or control of, a
18          financial institution, by means of false or fraudulent pretenses,
          representations, or promises;

19  18 U.S.C. § 1344.

20        The statute is "designed to provide an effective vehicle for the prosecution

21  of frauds in which the victims are financial institutions." *United States v. Bennett*,

22  621 F.3d 1131, 1135 (9th Cir. 2010). The scope of the first and second subsections

23  of §1344 differ substantially. *United States. v. McNeil,* 320 F.3d 1034, 1037 (9th

24  Cir. 2003). Section 1344(1) criminalizes schemes to defraud financial institutions,

25  while section 1344(2) is broader, as it criminalizes schemes to obtain money or

26  property in the custody or control of a bank by deceptive means.  *Id.*

27        For purposes of the Bank Fraud statute, the terms "scheme" or "artifice" are

28

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 3

defined to include any plan, pattern, or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived. *Id.* Further, a bank fraud charge may lie even if the bank is not the immediate or sole victim of the defendant's conduct. *Id.* at 1038. Also, the financial institution need not incur a loss in order to be a victim under § 1344. *United States v. Mason*, 902 F.2d 1434, 1442 (9th Cir. 1990) (implied overruling by *United States v. Doe*, 705, F.3d 1134 (9th Cir. 2013), on other grounds). A narrow construction of the statute would only permit the punishment of loss, rather than the conduct that led or could lead to loss. *Id.*

## ANALYSIS

Defendant contends that his actions do not violate § 1344 because the allegations do not constitute a scheme or artifice to defraud a financial institution. ECF No. 31. He further argues the allegations against him do not "constitute an act involving false pretense, representation, or promise." *Id.* at 4. Defendant cites to *United States v. Jacobs*, 117 F.3d 82, 92-93 (2d. Cir. 1997) (citing *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991), for the proposition that a scheme to pass bad checks is not a bank fraud, as it is not a fraud against the bank. ECF No. 31 at 3. Further, he argues the issuance of a check, even a check presented with insufficient funds, does not create a representation or promise as intended by the bank fraud statute. *Id.* (citing *Williams v. United States*, 102 S.Ct. 3088, 3091 (1982)).

The Government responds that it is alleging a violation of both subsections of Section 1344, and the Indictment recites as offense under the attempt prong of either subsection. ECF No. 32 at 9. The Government provides other additional facts subsequent to the presentation of the check to Pingrey and Defendant taking possession of the truck. However, those facts are not alleged in the "four corners" of the Indictment. Thus, the Court declines to consider them in making its determination whether the indictment is sufficient. *See Boren*, 278 F.3d at 914.

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT * 4**

The Government also distinguishes both of the cases cited by Defendant. First, the Government points out, Defendant's actions to present the check, knowing it would not be issued, and then requesting it be resubmitted after the initial dishonor, take this case outside the bounds of a "routine bad check case." *See, e.g.*, *United States v. Brandon*, 298 F.3d 307, 313 (4th Cir. 2002). The Government also points out that *Williams v. United States*, 458 U.S. 279, which construed 18 U.S.C. § 1014, has been superseded and placed check kiting within the scope of bank fraud.

Defendant relies upon the Fourth Circuit's decision in *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991). In *Orr*, defendant Eugene Elkins used false identification to open a checking account under the name "Eugene Rogers." *Id.* at 331. Elkins, and his co-defendant Orr, then subsequently negotiated checks for merchandise in excess of the value of the checking account. *Id.* Orr was convicted of bank fraud under § 1344. The Fourth Circuit reversed the conviction, and found there was no intent to defraud the bank where there was an initial cash deposit and the account was an active account, "traded upon in proper fashion until its funds ran out." *Id.* at 332. The *Orr* court then reasoned that Congress had not intended to create a national bad check law under § 1344. *Id.*

However, in a later case, the Fourth Circuit narrowed *Orr* where the defendants stole blank checks, forged the signatures, and used the checks to purchase items from various merchants. *See United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002). As the *Brandon* court noted:

> We view *Orr* as establishing merely that a routine bad check case does not come within the scope of § 1344 where the defendant passes to a merchant a check from an account for which the defendant is an authorized signatory and the drawee bank refuses to honor the check for lack of sufficient funds.

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 5

1   *Id.* at 313; *see also United States v. Cavin*, 39 F.3d 1299, 1308 (5th Cir. 1994)

2   ("[T]he evidence reflects that [the defendant] did nothing more than write a bad

3   check to accommodate a prospective client . . . does not constitute bank fraud.").

4       Here, the indictment alleges that Defendant presented a **single check** drawn

5   on his own Bank of America account in the amount of $68,488.53. (emphasis

6   added). The check was presented to Pingrey Motors as payee for the purchase of

7   the Ford F350 truck. There is no allegation in the Indictment that the account in

8   question was fraudulent. The indictment explicitly states that "[a]t all times

9   relevant . . . Defendant Robert Anton Lien was an account holder and maintained

10  signatory authority" on the personal checking account at Bank of America. ECF

11  No. 17 at ¶ 1. In sum, the Court agrees with Defendant that the facts of this case

12  are more analogous to *Orr* than *Brandon*, as there is insufficient information

13  alleged in the Indictment to take this case outside the bounds of a "routine bad

14  check case."

15      Next, the Court further agrees that a charge under the current Indictment for

16  § 1344(2) may not lie because a check is not a factual assertion and cannot alone

17  constitute false or fraudulent pretenses or representations. Where the only

18  allegation is that a defendant knew he was not entitled to the funds, without more,

19  (e.g., the check in question was not genuine or in any way put the bank at a risk of

20  loss), the Court concludes the allegations in the Indictment fail to sufficiently

21  allege facts to support a violation of § 1344(2):

22      A course of conduct consisting of simply depositing checks into a
23      bank account where the depositor knows that he/she is not entitled to
        the funds does not alone constitute false or fraudulent pretenses or
24      representations" within the meaning of § 1344, because " 'technically
        speaking, a check is not a factual assertion at all, and therefore cannot
25      be characterized as "true" or "false." ' " *United States v. Rodriguez,*
26      140 F.3d at 168 (quoting *Williams v. United States,* 458 U.S. 279,
        284, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982)).
27

28                          * * *

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> [W]e noted that "where a bank takes a check as a holder in due
> course, under most circumstances the bank cannot be victimized," and
> in such a situation the bank fraud statute is not violated. *United States
> v. Rodriguez,* 140 F.3d at 168 (footnote omitted); *see also United
> States v. Davis,* 989 F.2d 244, 247 (7th Cir.1993); U.C.C. § 3-302(a)
> (a bank is a holder in due course of a check where that check "does
> not bear such apparent evidence of forgery or alteration or is not
> otherwise so irregular or incomplete as to call into question its
> authenticity,"

*United States v. Laljie*, 184 F.3d 180, 190 (2d Cir. 1999).

In the instant case, as in *Laljie*, the Indictment fails to allege any facts the check presented to Pingrey was altered, forged, or otherwise not genuine. *Id.* at 191. Further, at all times the check was drawn on Defendant's own account and made payable to Pingrey as payee. Thus, the Court finds the Government, under these facts, has not alleged a violation of § 1344(2) sufficient to withstand a motion to dismiss, as the presentation of the check to Pingrey does not constitute a false or fraudulent pretense, representation, or promise.

After the hearing on October 1, 2013, the Government submitted a supplemental Memorandum Re: *United States v. Laljie*. ECF No. 35. The Government argues that it is unaware of, and the Defendant cites no Ninth Circuit authority that the "risk of loss/holder in due course" analysis defeats a § 1344 prosecution. *Id.* at 2. On the other hand, the Ninth Circuit has not adopted a "risk of loss" analysis in bank fraud cases. *United States v. Wolfsinkel*, 44 F.3d 782, 786 (9th Cir. 1995). In any event, the Court is satisfied the current Indictment does not sufficiently allege that Bank of America was exposed to a risk of loss under the facts of this case.

In addition, the Government cites to *United States v. Poliak*, 823 F.2d 371, 371-72 (9th Cir. 1987), and asserts that "there are many instances where, such as here, there is intent to defraud [] shown in addition to presentation of facially valid

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 7

but actually 'bad' checks." *Id.* However, *Poliak* is distinguishable from the instant case because it involved a check kiting scheme. [2] Here, no such allegations appear in the instant Indictment against Defendant. Similarly, *United States v. Bonallo*, also cited by the Government, is unlike the instant case as it involved a fraud on the bank and its customers by a bank employee. 858 F.2d 1427 (9th Cir. 1988).

The Government reiterates its core argument that the Indictment states an offense for Bank Fraud because the Indictment alleges that Defendant wrote a known bad check and then made "multiple" requests [3] to the dealership to resubmit the checks to Bank of America. In conjunction with the analysis above, the Court finds these allegations remain insufficient to state an offense under § 1344.

## CONCLUSION

In accordance with the authority cited above, and from the facts [4] alleged in the Indictment, the Government's position that Defendant wrote the check with knowledge there was insufficient funds, and then asked Pingrey for the check to be post-dated and re-submitted after it was dishonored for non-sufficient funds, does

---

[2] "Check kiting" is "the practice of playing one checking account against another, taking advantage of bank processing delays." *United States v. Turner,* 312 F.3d 1137, 1139 n. 1 (9th Cir. 2002). By carefully timing deposits and withdrawals, a person is able to create "the appearance of funds present and immediately available for withdrawal in an account, when none in fact are there." *Id.*

[3] The Government submits it is prepared to submit evidence at trial of scheme to defraud Pingrey including "disguises, multiple forged/false documents financial and otherwise), and multiple ruse calls, to sustain a conviction." ECF No. 35 at 2. However, the Court may not consider such facts on a motion to dismiss. *See Boren*, 278 F.3d 914.

[4] According to the Ninth Circuit, "[w]hen construing the meaning of an indictment, the description of the alleged conduct is far more critical than the indictment's prefatory language or its citation of a particular provision of a statute." *United States v. Bonallo*, 858 F.2d 1427, 1430 (9th Cir. 1988).

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 8

not constitute bank fraud under either prong of § 1344. Therefore, the instant Indictment must be dismissed without prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, ECF No. 31, is **GRANTED.**

2. The Indictment, ECF No. 17, is **DISMISSED** without prejudice.

3. The pretrial conference set for **October 22, 2013**, and the trial set for **November 12, 2013**, are hereby **VACATED**. [5]

4. All other pending hearings and deadlines are **STRICKEN**.

5. All pending motions are **DENIED** as moot.

6. Defendant shall remain under the custody of the U.S. Marshals Office, pending resolution of the supervised release violations in Case No. CR-08-2068-RHW.

7. The parties and U.S. Probation are **directed** to advise the Court as to the status of the pending supervised release revocation hearing in Case No. CR-08-2068-RHW by **October 15, 2013**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order dismissing the Indictment without prejudice, and forward copies to counsel and U.S. Probation, and **close the file**.

**DATED** this 7th day of October, 2013.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

---

[5] On October 1, 2013, the Court orally continued the current trial date of October 21, 2013 to November 12, 2013; and set a pretrial conference on October 22, 2013. _See_ ECF No. 34.

**ORDER GRANTING DEF.'S MOTION TO DISMISS INDICTMENT** * 9

q:\rhw\acriminal\2013\lien\order dismiss.docx